IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOSEPH CARTER | § | |
| | § | |
| V. | § | ACTION NO. 4:10-CV-825-Y |
| | § | |
| GREG GIBSON, TRENT LOVETTE, | § | |
| MICHAEL PAPPAS, CHARLES | § | |
| LINCOLN, STAN SWAN, and | § | |
| CROWLEY INDEPENDENT SCHOOL | § | |
| DISTRICT | § | |

## ORDER GRANTING MOTION TO DISMISS

Pending before the Court is Defendants' Motion to Dismiss (doc. 22), filed March 11, 2011. The Court GRANTS the motion.

Before discussing the merits of the case, the Court must clear up who is a party to the case. On October 29, 2010, plaintiff Joseph Carter filed a complaint against Greg Gibson, Trent Lovette, Michael Pappas, Charles Lincoln, Stan Swan,[1] and the Crowley Independent School District Board ("the CISD Board") for employment discrimination and retaliation. On November 22 and before any defendant had appeared, Carter filed an amended complaint against Gibson, Lovette, Pappas, Lincoln, and Swan. Carter did not name the CISD Board as a defendant. On February 28, 2011, and with leave of Court, Carter filed a second amended complaint. The caption of the second amended complaint lists only Gibson, Lovette, Pappas, Lincoln, and Swan as defendants. But the complaint itself lists Crowley Independent School District ("CISD") as a defendant in its capacity as the individual defendants' employer. (2nd Am. Compl. 1, 2 at ¶ 5.) When the individual defendants filed their motion to dismiss, it was also filed on behalf of CISD. The Court concludes

---

[1] The Court will refer to these defendants individually by their last names and collectively as "the individual defendants."

that CISD is a defendant in this case and should be included in the style of the case in all pleadings.[2]

## I. BACKGROUND

Beginning in August 2002, Carter was employed by CISD as the offensive coordinator for the North Crowley High School football team. Pappas was the head football coach. Pappas allegedly used racial slurs and derogatory comments when talking to the team. Near the end of the 2007-2008 school year, Carter was removed as offensive coordinator. Carter filed a grievance against Pappas in May 2008 based on Pappas's alleged repeated racial comments to the team. It is unclear with whom Carter filed his grievance, but the Court assumes it was with CISD through its internal administrative procedures. On August 25 and before CISD could hold a hearing on Carter's grievance, Carter and CISD agreed that if Carter would withdraw his grievance against Pappas, Carter would be reassigned to the newly created position of director of football operations beginning August 25. Carter accepted, withdrew his grievance, and began working in the new position.

About two years later on April 7, 2010, Carter was told that CISD had eliminated Carter's position and that he had been reassigned to an intermediate school as a physical-education teacher for the 2010-2011 school year. Carter filed an internal grievance regarding his reassignment, which was denied. Carter filed a charge of discrimination with the Equal Employment Opportunity Commission ("the EEOC") regarding his reassignment from his position as director of football operations. The EEOC issued him a right-to-sue letter on August 2. After filing a second amended complaint in response to Defendants' first motion to dismiss, Carter now argues CISD breached the 2008 contract appointing him director of football operations, committed fraud, and retaliated against

---

[2]The Court notes that Carter continues to include solely the individual defendants in the caption of his pleadings. If Carter fails to use "et al." in pleadings other than an amended complaint, CISD must be included in the caption or the Court may unfile the pleading without further notice. *See* Fed. R. Civ. P. 10(a).

2

him for reporting Pappas's discriminatory conduct. Carter raises claims for fraud, retaliation, and racial discrimination against Pappas and for fraud against Gibson, Lovette, Lincoln, and Swan.[3] Against CISD and Pappas, Carter also raises "race discrimination" and equal-protection violations in contravention of § 1983. CISD and the individual defendants ask the Court to dismiss Carter's claims because he fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 9(b),[4] 12(b)(6).

## II. STANDARD OF REVIEW

### A. RULE 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must, however, be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions). As a result, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The Court must accept as true all well pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *See id.*

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid

---

[3] Lincoln was CISD's athletic director. Swan was CISD's human-resources director. Gibson was the CISD superintendent. Lovette was the principal of North Crowley High School.

[4] Although Defendants did not specifically raise Rule 9(b) regarding Carter's fraud claim, the Court may evaluate it under Rule 9(b) sua sponte and dismiss it for failure to state an actionable claim. *See Goss v. Firestone Polymers, LLC*, No. 1:04-CV-665, 2005 WL 1004717, at *19 (E.D. Tex. Apr. 13, 2005).

dismissal. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 556 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), to the extent the Court concluded therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief").

In considering a motion to dismiss for failure to state a claim, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). Documents attached to or incorporated in the complaint are considered part of the plaintiff's pleading. *See* FED. R. CIV. P. 10(c); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2d Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

B.  RULE 9(B)

Under Rule 9(b), a claim involving fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) (stating Rule 9(b) applies to pleading state-law claim of conspiracy to commit fraud). To comply with this rule, a plaintiff must "allege the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby, otherwise referred to as the who, what, when, where, and how of the alleged fraud." *United States ex rel. Williard v. Humana Health Plan*

4

*of Tex., Inc.*, 336 F.3d 375, 384 (5th Cir. 2003).[5] But in cases where the plaintiff is alleging that the fraud occurred over a period of years, the plaintiff is not required to allege all facts supporting every instance when the defendant engaged in fraud. *See United States ex rel. King v. Alcon Labs., Inc.*, 232 F.R.D. 568, 570 (N.D. Tex. 2005). Further, if the facts relating to the alleged fraud are within the perpetrator's specific knowledge or control or where fraud occurred over an extended period of time and consists of numerous acts, the Rule 9(b) requirements are less exact. *See United States ex rel. Thompson v. Columbia Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

Although pleading fraud on information and belief is allowable, this relaxation of the specificity standard should not be construed to allow fraud claims to be based on speculation and conclusory allegations. *See Willard*, 336 F.3d at 385. A fraud complaint must provide a factual basis to support the plaintiff's belief. *See id.* In this case, it is important to remember that Rule 9(b) supplements, but does not replace, Rule 8(a)'s notice pleading. *See Kanneganti*, 565 F.3d at 186. Rule 9(b) does not "reflect a subscription to fact pleading" and requires only "simple, concise, and direct" allegations of the "circumstances constituting fraud," which must make relief plausible, not merely conceivable, when taken as true. *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

---

[5]"Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.*

III. DISCUSSION[6]

A. STATUTE OF LIMITATIONS: § 1983 AGAINST
PAPPAS AND RETALIATION AGAINST PAPPAS AND CISD

1. § 1983 Against Pappas

Carter alleges that Pappas discriminated against him and violated his rights to equal protection when Pappas restricted Carter's duties and then removed him from his position as offensive coordinator for complaining about Pappas's racial comments and would not allow him to be considered for head coaching positions based on Carter's race.[7] (2nd Am. Compl. 5 at ¶¶ 20-21.) Carter brings these claims under § 1983. *See* 28 U.S.C. § 1983. (2nd Am. Compl. 5 at ¶ 20.) Thus, these claims are governed by the personal-injury limitations period of Texas. *See Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006). In Texas, personal-injury actions must be brought within two years of the date the cause of action accrued. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (West Supp. 2010); *see also Jackson v. Houston Indep. Sch. Dist.*, 994 S.W.2d 396, 402 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding two-year limitations period applies to due-process claim under Texas Constitution). Likewise, Texas's tolling provisions apply. *See Hawkins v. McHugh*, 46 F.3d 10, 12 (5th Cir. 1995). But federal law controls when a cause of action accrues, which is when the plaintiff becomes aware that she has suffered an injury or has sufficient information to know that she has been injured. *See Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992).

Carter asserts that Pappas discriminated against Carter and violated Carter's rights to equal protection when Pappas removed Carter as the offensive coordinator for reporting Pappas's racially

---

[6]The Court agrees with Defendants that Carter's allegations are hard to follow. (Reply 4.) Carter's complaint, although divided into headings, includes allegations relating to one claim under a heading for another claim. The Court has attempted to corral Carter's allegations, but their amorphous nature made this task difficult.

[7]Carter is black.

derogatory remarks and for not allowing Carter to work with and "bond with" the freshman football players while Carter was offensive coordinator. (2nd Am. Compl. 5 at ¶¶ 20-21.) Pappas argues that Carter's claim was raised outside the two-year limitations period because Carter was removed as offensive coordinator at the latest in August 2008, but did not file his claim until October 2010. Carter seems to make a tolling argument in response by asserting that CISD waited until after Carter's "statutory period expired for him to pursue legal claims due to [Pappas's] action" before terminating Carter's position as director of football operations. (2nd Am. Compl. 5 at ¶ 19; Resp. 7.) But Carter received notice on April 7, 2010, that his position was ending and that he would be reassigned to another school. This was approximately four months before the limitations period regarding Pappas's August 2008 actions expired. *Cf. Cabeen v. Thomas*, No. 10-20385, 2011 WL 303262, at *1 (5th Cir. Feb. 1, 2011) (equitable tolling did not apply where disability arose after limitations period began). Further, the Court agrees with Pappas's argument that Carter's tolling argument necessarily would extend the limitations period indefinitely or until Carter became dissatisfied with his position as director of football operations. (Mot. 4.) Thus, Carter's § 1983 claim against Pappas is time-barred and fails to state a claim upon which relief may be granted.

But Carter's claim that Pappas did not allow him to be considered for the head coaching position after Pappas resigned is not time-barred. It is not clear when the interviews for Pappas's replacement occurred, but Carter indirectly alleges that they occurred shortly before the beginning of the 2010-2011 school year. (2nd Am. Compl. 6 at ¶22.) Carter sufficiently has alleged a claim within the two-year statute of limitations to withstand a challenge under Rule 12(b)(6).

2. Retaliation Against Pappas and CISD

Carter asserts that Pappas and CISD removed him from his position as offensive coordinator in 2008 in retaliation for his complaints about Pappas's racially derogatory comments.[8] (2nd Am. Compl. 6 at ¶ 23; Resp. 4.) As do Defendants, the Court assumes that Carter is raising his retaliation claim under § 1983. (Mot. 13; 2nd Am. Compl. 2 at ¶ 6; Resp. 5.) As such, the claim is subject to a two-year limitations period. As with his § 1983 claim against Pappas regarding Carter's 2008 removal as offensive coordinator, this claim is time-barred.

B. CLAIMS FOR RACIAL DISCRIMINATION AND
EQUAL-PROTECTION VIOLATIONS: PAPPAS AND CISD

Carter argues that Pappas prevented Carter from interviewing for the head coaching position at North Crowley High School and that CISD "has a history and practice of not promoting African Americans in its major sports programs," thereby violating Carter's rights under § 1983. (2nd Am. Compl. 5-6 at ¶¶ 21-22.) To prevail on his § 1983 claims against a governmental entity, Carter must show the deprivation of a constitutional right took place under an official policy or custom. *See Shields v. Twiss*, 389 F.3d 142, 151 (5th Cir. 2004); *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003). Carter must specifically identify each official policy or custom. *See Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Importantly, a governmental entity may not be held liable for the acts of its employees under a theory of respondeat superior. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 380 (5th Cir. 2007).

An official policy sufficient to impose liability on a municipality requires three components:

---

[8] Carter also alleges that Pappas not allowing Carter to interview for the head coaching job at North Crowley High School is "another incident of retaliation." (2nd Am. Compl. 6 at ¶ 24.) But in his response to Defendants' dismissal motion, Carter states that his retaliation claim "is based on his being removed as Offensive Coordinator in 2008 because he complained of racially discriminatory behavior by Defendants" and does not relate to his reassignment for the 2010-2011 school year. (Resp. 4.)

(1) a policymaker, (2) an official policy or custom, and (3) a violation of constitutional rights directly resulting from the official policy or custom. *See Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). State law determines whether a particular individual is a final policymaker of a governmental entity. *See Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). Carter must point to more than isolated unconstitutional actions of a CISD employee; instead, he must identify a policymaker with final policymaking authority and a policy that is the moving force behind the alleged constitutional violations. *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).

A governmental entity may also be sued for constitutional deprivations caused by governmental custom even though such custom has not received formal approval through the body's official decisionmaking channels. *See Monell*, 436 U.S. at 690-91. A custom is considered a persistent and widespread practice of city officials or employees if, although not authorized by officially adopted and promulgated policy, the practice is so common and well settled as to constitute a custom that fairly represents the governmental entity's policy. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). Actual or constructive knowledge of such custom must be attributable to the governing body of the governmental entity or to an official to whom that entity had delegated policymaking authority. *See id.* To hold a governmental entity liable for the acts of a nonpolicymaking employee, the plaintiff must allege that (1) a custom existed, (2) the governmental policymakers actually or constructively knew of its existence, (3) a constitutional violation occurred, and (4) the custom served as the moving force behind the violation. *See Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996). Proof of random acts or isolated incidents is not sufficient to show the existence of a custom. *See McClendon v. City of Columbia*, 258 F.3d 432, 441-42 (5th Cir. 2001).

Carter fails to allege that any of the defendants was a policymaker.[9] Indeed, the final policymaker of a school district under Texas law is the district's board of trustees. *See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 2003). Carter makes no allegation that the CISD Board was involved in the decision not to allow Carter to interview for the head coaching position at North Crowley High School. Similarly, Carter does not allege that the CISD Board was involved in failing to promote blacks. Instead, Carter claims that CISD's systematic failure to promote blacks in its sports programs and its failure to allow Carter to interview for a head coaching position were part of a widespread custom, which can extend liability to CISD:

> Plaintiff believes and alleges that CISD has a history and practice of not promoting African Americans in its major sports programs. As an example of CISD's racially discriminatory practice, CISD has two high schools. Each of those schools has three major boys' sports teams (football, basketball and baseball). The head coaches for these combined six positions have consistently been white men. This is despite the fact that over seventy percent (70%) of the athletes are African American. The only African American man was hired to replace [Pappas], after [Carter] had initiated this proceeding. Plaintiff was not allowed to interview for this position.

(2nd Am. Compl. 5 at ¶ 22.)

First, the failure to grant Carter an interview for a coaching position is an isolated incident, which cannot support liability as to CISD. *See McClendon*, 258 F.3d at 441-42. Second, Carter's conclusory allegations of a widespread practice of racial discrimination in promotions are insufficient to raise his claim from merely speculative to plausible. Carter's reference to the racial make up of the football team is insufficient to allege discrimination in the appointment of head coaches. *Cf. Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 273-76 (1986) (holding school board could not justify consideration of race in teaching hires based on race of student body). Thus, the

---

[9]In his response, Carter asserts in a conclusory manner that "[h]iring and firing of assistant football coaches has been delegated to [Pappas]." (Resp. 6.) But Carter's claims against Pappas and CISD regarding his 2008 negotiated reassignment are time-barred.

extent of Carter's factual allegations to support his claim of racial discrimination under § 1983 is his statement that the six head coaches for the "major" boys sports in CISD are white. But Carter must plead the alleged discrimination under § 1983 with specific allegations of fact indicating a deprivation of civil rights, rather than simple conclusions. *See Koch v. Yunichi*, 533 F.2d 80, 85 (5th Cir. 1976). Allegations that a defendant has taken or failed to take certain actions because of race are conclusory and insufficient to state a civil-rights claim. *See Forte v. Bd. of Managers of Cont'l Towers Condos.*, 848 F.2d 24, 25-26 (2d Cir. 1988). It is not enough to allege subjectively that a defendant has engaged in certain conduct because of race. *See Dickerson v. O'Neill*, 73 Fed. Appx. 84 (5th Cir. 2003); *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 996 (5th Cir. 1995); *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983); *Reece v. Countrywide Home Loans, Inc.*, No. 7:06-CV-181-O, 2008 WL 4559809, at *2-3 (N.D. Tex. Oct. 10, 2008) (O'Connor, J.). Here, Carter has failed to allege with specificity any facts rising above his subjective belief that CISD's coaching hires improperly were based on race. The Court will not assume Carter's conclusory allegations are true. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Thus, Carter's claim is not plausible and must be dismissed.

C. BREACH OF CONTRACT: CISD[10]

Carter next asserts that CISD breached its contract with Carter when it eliminated the position of director of football operations before the 2010-2011 school year and reassigned him to

---

[10]It is unclear which defendant Carter alleges breached the contract. (2nd Am. Compl. 6 at ¶ 25.) However, Carter makes some representations in his complaint and his response to Defendants' dismissal motion that lead the Court to conclude that Carter's breach-of-contract claim solely is brought against CISD. (2nd Am. Compl. 4 at ¶ 17; Resp. 9-10.) Even if the Court construed the claim also to be brought against the individual defendants, the Court would have to dismiss it because there are no facts alleged to connect the individual defendants to the alleged contract. Further, there is no allegation that these defendants had the authority to contract with Carter regarding the football operations position. (Mot. 15; Reply 5.)

11

an intermediate school. (2nd Am. Compl. 6-7 at ¶ 25.) Carter bases his allegation on the fact that he withdrew his grievance regarding his removal as offensive coordinator in exchange for the position of director of football operations, which converts the agreement into an enforceable settlement contract. (Resp. 7.) Carter asserts the breach occurred when CISD demoted and assigned Carter to an intermediate school after "the statutory period to commence action due to his removal had passed." (Resp. 8.) Under Texas law, Carter was required to exhaust his administrative remedies before seeking relief from the employment contract. *See* Tex. Educ. Code Ann. § 7.057(a)(2)(B) (West 2006). Carter has not alleged that he did so; thus, this claim must be dismissed for lack of jurisdiction. *See N.E. Indep. Sch. Dist. v. Kelley*, 277 S.W.3d 442, 444-45 (Tex. App.—San Antonio 2008, no pet.).

### D. FRAUD: CISD AND THE INDIVIDUAL DEFENDANTS

Finally, Carter asserts that CISD and the individual defendants "colluded and conspired to defraud [Carter] by offering him a position that was designed to entice him to drop his grievance proceedings." (2nd Am. Compl. 5 at ¶ 19.) In short, Carter believes that CISD and the individual defendants created the director-of-football-operations position knowing it was not a permanent position and solely to commit fraud. (2nd Am. Compl. 7-8 at ¶¶ 29-30.) As set out above, an allegation of fraud must be pleaded with particularity. Carter has wholly failed to allege the particulars of time, place, and contents of the false representations, as well as the specific identity of the person making the misrepresentation and what that person obtained thereby. (Reply 7.) Indeed, Carter does not even attempt to allege which defendant made what representation. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (holding plaintiff must allege

facts as to each defendant's participation in the fraud). Because Carter already has amended his complaint in response to Defendants' first motion to dismiss and because Carter does not seek leave to further amend his complaint, the Court does not need to allow further amendment of the fraud claim and dismisses this claim under Rules 9(b) and 12(b)(6). *See Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 384-85 (5th Cir. 2004). Additionally, the individual defendants are immune from suit under state law as professional employees. *See* Tex. Educ. Code Ann. § 22.0511(a) (West 2006).

## IV. CONCLUSION

Carter's claims against Pappas and CISD based on his 2008 removal as offensive coordinator are time-barred. Carter's § 1983 claims are conclusory and must be dismissed under Rule 12(b)(6). Carter's breach-of-contract claim is dismissed for lack of administrative exhaustion under state law. Finally, Carter's fraud claim was not pleaded with the requisite particularity and must be dismissed under Rules 9(b) and 12(b)(6).

SIGNED April 20, 2011.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE